UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSE LUIS LANDAVERDE ARDON,

      Petitioner,

v.                                                                    Case No: 6:26-cv-313-JSS-LHP

JOHN MINA, LOUIS A. QUINONES,
JR., TODD LYONS, KRISTI NOEM,
PAMELA BONDI, GARRETT RIPA,
U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT and
DEPARTMENT OF HOMELAND
SECURITY,

      Respondents.
_____/

## ORDER

      Petitioner, Jose Luis Landaverde Ardon, initiated this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. 1.) To prevent Respondents from transferring him to another facility or otherwise altering his custodial status, Petitioner moves for entry of an ex parte temporary restraining order (TRO). (Dkt. 2.) Upon consideration, for the reasons outlined below, the court grants the motion and issues a TRO that requires Respondents to preserve the status quo.

## BACKGROUND

      Petitioner is "a native and citizen of El Salvador," who has lived in the United States for more than a decade. (Dkt. 1 at 2; *see* Dkt. 2 at 4.) Petitioner alleges that he is currently seeking lawful permanent resident status. (Dkt. 1 at 5–6.) According to

Petitioner, he is the sole financial provider for his two minor daughters, both of whom are United States citizens. (*Id.* at 2, 5.) Reportedly, Petitioner's sister is also a United States citizen, and his parents are lawful permanent residents. (*Id.*)

Earlier this month, Petitioner was purportedly arrested and charged with "driving without a valid driver['s] license." (*Id.* at 5.) According to Petitioner, he posted bond but was never released. (*Id.*; *see* Dkt. 1-1.) Instead, Petitioner was taken to the local Immigration and Customs Enforcement ("ICE") office, where officials allegedly attempted to coerce him into self-deporting. (Dkt. 1 at 5.) Petitioner states that ICE officials threatened to take his children into custody if he did not waive his right to go before an immigration judge and self-deport. (*Id.* at 5.) The officials also purportedly threatened to place Petitioner's children in the care of the Department of Children and Families if he did not agree to leave the country and assign full custody to his sister. (*Id.* at 6.)

When Petitioner refused to self-deport, ICE officials allegedly booked him into the Orange County Jail, "with no criminal charges pending." (*Id.* at 7.) Petitioner maintains that his continued detention violates the Fourth Amendment's prohibition against unreasonable searches and seizures, as well as the Fifth Amendment's guarantee of due process of law. (*See id.* at 8–10.) Accordingly, Petitioner seeks the following relief: (1) a writ of habeas corpus directing his immediate release, (2) preliminary injunctive relief prohibiting Respondents from transferring him pending the resolution of this case, (3) preliminary and permanent injunctive relief enjoining Petitioner's continued detention, (4) a declaration that Petitioner's detention based

solely on an ICE detainer is unlawful, (5) expedited proceedings, and (6) an award of legal fees under 28 U.S.C. § 2412. (*Id.* at 9–10.)

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 65 governs TROs. *See* Fed. R. Civ. P. 65(b)–(d). The court cannot grant a petitioner's motion for a TRO without notice to the respondent unless "specific facts," supported by evidence, "clearly show that immediate and irreparable injury, loss, or damage will result to the [petitioner] before the [respondent] can be heard in opposition" and the petitioner's "attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1); *see* Local Rule 6.01(a)(2) ("A motion for temporary restraining order must include . . . specific facts—supported by a verified complaint, an affidavit, or other evidence—demonstrating an entitlement to relief."). "Every [TRO] issued without notice must state the date and hour it was issued[,] describe the injury and state why it is irreparable[,] state why the order was issued without notice[,] and be promptly filed in the [C]lerk's [O]ffice and entered in the record." Fed. R. Civ. P. 65(b)(2). "The [TRO] expires at the time after entry—not to exceed [fourteen] days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the [respondent] consents to a longer extension." *Id.* The Supreme Court has explained that such ex parte TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v.*

*Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

Whether issued with or without notice, "every [TRO] must . . . state the reasons why it issued[,] . . . state its terms specifically[,] and . . . describe in reasonable detail— and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Rule 65 also states: "The court may issue . . . a [TRO] only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully . . . restrained." Fed. R. Civ. P. 65(c); *accord* M.D. Fla. R. 6.01(a)(4) (requiring a TRO motion to "include . . . a precise and verified explanation of the amount and form of the required security"). Still, the "court has [the] discretion to waive [the security] requirement imposed by Rule 65(c)." *Disability Rts. Fla., Inc. v. Jacobs*, 473 F. Supp. 3d 1335, 1340 (M.D. Fla. 2019) (citing *Baldree v. Cargill, Inc.*, 758 F. Supp. 704, 707–08 (M.D. Fla. 1990), *aff'd*, 925 F.2d 1474 (11th Cir. 1991)).

"A TRO or preliminary injunction is appropriate where the movant" satisfies four requirements: (1) "there is a substantial likelihood of success on the merits," (2) "the TRO or preliminary injunction is necessary to prevent irreparable injury," (3) "the threatened injury outweighs the harm that the TRO or preliminary injunction would cause to the non-movant," and (4) "the TRO or preliminary injunction would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034 (11th Cir. 2001); *accord* M.D. Fla. R. 6.01(b), 6.02(a)(1). A TRO "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites." *Wall v. Ctrs.*

*for Disease Control & Prevention*, 543 F. Supp. 3d 1290, 1292 (M.D. Fla. 2021) (alteration adopted and quotations omitted).

**ANALYSIS**

There are four prerequisites for obtaining a temporary restraining order.  *See Parker*, 275 F.3d at 1034.  The court will address each in turn.

**A. Likelihood of Success on the Merits**

Petitioner has demonstrated a substantial likelihood of success on the merits to obtain a TRO.  "The Fifth Amendment, as well as the Fourteenth Amendment, protects every [noncitizen within the jurisdiction of the United States] from deprivation of life, liberty, or property without due process of law."  *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *see Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Whatever his status under the immigration laws, [a noncitizen] is surely a 'person' in any ordinary sense of that term.  [Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."); *Hincapie v. United States AG*, 604 F. App'x 882, 884 (11th Cir. 2015) ("The Fifth Amendment right to due process applies to non[]citizens in removal proceedings." (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Rodriguez v. Quinones, Jr.*, No. 6:26-CV-187-PGB-DCI, 2026 WL 194218, at *2 (M.D. Fla. Jan. 26, 2026) ("Noncitizens present in the United States are entitled to due process under the Fifth Amendment[, . . . including] protection against deprivations of liberty, such as immigration detention, without due process of law." (quotation

omitted)).    Accordingly, "[l]imitations like the Due Process Clause . . . restrict the Government's power to detain noncitizens," and "[c]ourts must review immigration procedures and ensure that they comport with the Constitution." *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1334 (M.D. Ga. 2020) (citing *Demore v. Kim*, 538 U.S. 510 (2003)).

Here, the central issue is whether Petitioner's detention is governed by 8 U.S.C. § 1225 or 8 U.S.C. § 1226. *Compare* 8 U.S.C. § 1225(b)(2)(A) *with* 8 U.S.C. § 1226(a). Importantly, a noncitizen detained under section 1226 may be entitled to a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that [noncitizens] detained under [section] 1226(a) receive bond hearings at the outset of detention."); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579–80 (2022) ("Noncitizens detained under [section] 1226(a) receive bond hearings after the Government initially detains them.").

The Supreme Court analyzed the interplay between sections 1225 and 1226 in *Jennings v. Rodriguez*, U.S. 281, 288 (2018).    In *Jennings*, the Court explained that section 1225(b) "applies primarily" to noncitizens "seeking entry into the United States." *Id.* at 297.   By contrast, section 1226 applies to noncitizens "already present in the United States." *Id.* at 303; *see Johnson*, 596 U.S. at 579 (explaining that section 1226(a) "governs the detention of certain noncitizens present in the country who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since they were admitted"); *Johnson v. Guzman Chavez*, 594 U.S. 523, 543 (2021) (differentiating between sections 1225 and 1226, noting that each represents a

"sequential step[] of the removal process," as section 1225 "provides instructions for inspecting [noncitizens], expediting the removal of some, and referring others for a removal hearing" while section 1226 "authorizes the arrest and detention of [noncitizens] pending a decision on whether they are to be removed"); *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) ("8 U.S.C. § 1226[] provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."). Indeed, noncitizens present in the United States are treated differently from those seeking entry. *See Zadvydas v. Davis*, 533 U.S. 678, 679 (2001) ("Once [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent."); *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely on the threshold of initial entry."); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (explaining that noncitizens "who have established connections in this country have due process rights in deportation proceedings," while those who are apprehended "at the threshold of initial entry" lack the same constitutional protections).

As the Supreme Court recognized in *Jennings*, sections 1225 and 1226 differentiate between noncitizens "seeking entry into the United States" and

noncitizens who are "already present in the United States."    583 U.S. at 303.

"Interpreting [section] 1225 to govern all noncitizens present in the country who had

not been admitted leaves [section] 1226 with no apparent application." *Patel v. Hardin*,

No. 2:25-CV-870-JES-NPM, 2025 WL 3442706, at *5 (M.D. Fla. Dec. 1, 2025) (citing

*TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).    Accordingly, most courts considering

this issue have determined that noncitizens, like Petitioner, who are present in the

United States, fall under the permissive provisions of section 1226, entitling them to a

bond hearing. *See Claros v. Louis A. Quinones, Jr.*, No. 6:26-CV-208-JSS-LHP, 2026 WL

251807, at *3 (M.D. Fla. Jan. 30, 2026) (collecting cases); *Izaguirre v. Mordant*, No.

2:26-CV-00048-SPC-DNF, 2026 WL 194214, at *1 (M.D. Fla. Jan. 26, 2026)

(concluding that section 1226 applied to a noncitizen "who entered the country

without inspection" and was later detained within the United States, thereby entitling

him to a bond hearing); *Jacobo v. Ripa*, No. 2:25-CV-1190-KCD-NPM, 2026 WL

145460, at *1 (M.D. Fla. Jan. 20, 2026) (determining that the detention of a noncitizen

who "illegally entered the United States nearly [twenty] years ago" was governed by

section 1226); *Ortiz v. Mordant*, No. 2:25-CV-1160-JES-DNF, 2026 WL 44815, at *1

(M.D. Fla. Jan. 7, 2026) (concluding that section 1226 applied to a noncitizen who

"entered the United States without inspection," which required that he receive a bond

hearing); *Ortiz v. Noem*, No. 3:25-CV-1386-MMH-MCR, 2025 WL 3653217, at *6

(M.D. Fla. Dec. 17, 2025) ("It is undisputed that [the petitioner] entered the United

States without inspection and has been residing here since 2013.    Thus, he is not

properly detained under [section] 1225(b)(2). . . . Instead, his detention is governed by

[section] 1226, and he is therefore entitled to a bond hearing before an immigration judge."); *Garcia v. Noem*, No. 2:25-CV-00879-SPC-NPM, 2025 WL 3041895, at *5 (M.D. Fla. Oct. 31, 2025) (determining that a noncitizen was entitled to a bond hearing under section 1226(a) because he was detained within the United States); *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *2 (M.D. Fla. Oct. 29, 2025) (concluding that section 1226 applied to a noncitizen who illegally entered the United States and resided within this country for more than a decade before he was detained, thus entitling him to a bond hearing); *see also Castillo Reyes v. Rose*, No. 25-7138, 2026 WL 75816, at *1 n.2, *3–6 (E.D. Pa. Jan. 9, 2026) (observing that, in this context, most courts to have considered whether a noncitizen, arrested within the United States, is detained under section 1225 or section 1226 have concluded that the latter provision governs and that the noncitizen is entitled to a bond hearing before an immigration judge).

In this case, Petitioner was arrested while physically present in the United States. (Dkt. 1 at 5.) Accordingly, it appears that section 1226, as opposed to section 1225, governs Petitioner's detention. *See Jennings*, U.S. at 303 (stating that section 1226 applies to noncitizens "already present in the United States"); *Johnson*, 596 U.S. at 579 (explaining that section 1226(a) "governs the detention of certain noncitizens present in the country who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since they were admitted"); *Diaz*, 53 F.4th at 1196 (explaining that section 1226, "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal").

Yet, according to Petitioner, he remains confined at the Orange County Jail without any judicial determination authorizing detention. (Dkt. 1 at 7.) Therefore, Petitioner's continued detention without a bond hearing likely violates federal law. *See Patel*, 2025 WL 3442706, at \*5 ("As a noncitizen detained under [section] 1226(a), [the petitioner] has a right to a bond hearing."); *Izaguirre*, 2026 WL 194214, at \*1 ("As a noncitizen detained under [section] 1226(a), [the petitioner] has a right to a bond hearing. . . . [His] mandatory detention under [section] 1225(b)(2) is [therefore] unlawful."); *Ortiz*, 2025 WL 3653217, at \*6 (concluding that it was unlawful for the government to detain a noncitizen who entered the United States without inspection without the benefit of a bond hearing before an immigration judge).

### B. Irreparable Harm

"To establish irreparable harm, the movant must show that the injury is immediate and is not compensable by monetary damages." *Lead Creation Inc. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 8:23-CV-49-CEH-CPT, 2023 WL 1993971, at \*4 (M.D. Fla. Feb. 14, 2023) (quotation omitted). A TRO is required, as "the deprivation of constitutional rights . . . constitutes irreparable injury." *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1205 (S.D. Fla. 2020) (quotation omitted); *Rodriguez*, 2026 WL 194218, at \*2. "Without interim relief to maintain the status quo, [Petitioner] could be deported or removed from this [c]ourt's jurisdiction, effectively foreclosing any recourse." *Lopez*, 2025 WL 2732717, at \*2; *see Soliman v. United States*, 296 F.3d 1237, 1243 (11th Cir. 2002) (finding that a challenge solely to

the petitioner's detention became moot upon his deportation); *Moore v. Ashcroft*, 251 F.3d 919, 922 (11th Cir. 2001) (concluding that a petitioner's challenge to her detention survived a mootness challenge because she also challenged her order of removal).  Given the possibility that he is being unlawfully detained, the court deems it necessary in the interests of justice for Petitioner to remain nearby at the Orange County Jail.  Further, ordering that Petitioner not be transferred from the Orange County Jail serves the interests of fairness and efficiency.  Petitioner has satisfied the court that irreparable harm will occur absent this relief.

### C. Balance of the Harms and Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences" when they provide injunctive relief.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  The balance of equities and public interest favors injunctive relief.  Based on the allegations in the petition and the documentary evidence, Petitioner is arguably unlawfully detained under section 1225.  (*See* Dkts. 1, 2.)  Petitioner has established not only that his threatened injuries outweigh the harms that a TRO would cause Respondents but also that a TRO would serve the public interest: ensuring due process maintains an appropriate balance of interests.  *See Zadvydas*, 533 U.S. at 690; *Mejia v. Noem*, No. 2:25-cv-981-SPC-NPM, 2025 WL 3078656, at *3, 2025 U.S. Dist. LEXIS 217352, at *7 (M.D. Fla. Nov. 4, 2025) (citing *Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005), and *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).

**D**. **Security**

Finally, Federal Rule of Civil Procedure 65(c) specifies that the court "may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  Security is typically required, but "the amount . . . is a matter within the discretion of the trial court, and the court may elect to require no security at all."  *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (alterations adopted and quotation omitted).  Having considered the matter, the court will exercise its discretion not to require security at this time.  *See Saint Remy v. Bondi*, No. 3:26-cv-28-MMH-SJH, 2026 U.S. Dist. LEXIS 5322, at *3 (M.D. Fla. Jan. 12, 2026) ("[B]ecause there is no realistic likelihood of prejudice to [the r]espondents from the issuance of this limited restraint, the [c]ourt exercises its discretion to dispense with the requirement that [the petitioner] provide security[.]").  That said, this issue may be revisited at any time, and a monetary security may be imposed should an application be made in the interest of justice.

## CONCLUSION

Accordingly:

1.    Petitioner's motion (Dkt. 2) is **GRANTED** as set forth in this order.

2.    The following TRO is **ENTERED**:

- 12 -

## TEMPORARY RESTRAINING ORDER

1.   Respondents and those in privity with them are hereby **TEMPORARILY
     ENJOINED** from transferring Petitioner from the Orange County Jail **until
     further order of the court**.

2.   Respondents shall respond in writing to the motion (Dkt. 2) by **February 13,
     2026, at NOON** and show cause why the court should not convert this TRO to
     a preliminary injunction.

3.   The Clerk is **DIRECTED** to serve Respondents forthwith by serving copies of
     the petition (Dkt. 1), the motion (Dkt. 2), and this order in the following five
     ways: (1) email the United States Immigration and Customs Enforcement (ICE)
     (with attention to the Assistant Field Office Directors) at MIAAOR-Habeas-
     DG@ice.dhs.gov, (2) email the United States Attorney's Office (USAO) at
     USAFLM.Orlando2241@usdoj.gov, (3) email courtesy copies to the Orange
     County Jail at the address on file with the Clerk's Office, (4) email courtesy
     copies to the United States Marshal Service at usms-mfl-orl@usdoj.gov, and (5)
     send copies via certified mail to the United States Attorneys Office and the
     United States Attorney General (USAG) at the physical addresses on file with
     the Clerk's Office.

4.   No monetary security shall be required, as the court deems it unnecessary at this
     time.

5.   The court will consider this matter at a hearing to be set by separate notice.

**ORDERED** in Orlando, Florida, at 5:15 PM ET on February 9, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

Office of the United States Attorney
400 W. Washington Street
Suite 3100
Orlando, Florida 32801

Kristi Noem, Secretary,
Office of the General Counsel,
United States Department of Homeland Security
2707 Martin Luther King, Jr. Ave, SE
Washington, D.C., 20528

Garrett Ripa, Miami Field Office Director,
United States Immigration and Customs Enforcement
865 SW 78th Avenue
Suite 101
Plantation, Florida 33324

USAFLM.Orlando2241@usdoj.gov