UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSE LUIS LANDAVERDE ARDON,

    Petitioner,

v.   Case No: 6:26-cv-313-JSS-LHP

JOHN MINA, LOUIS A. QUINONES, JR. , TODD LYONS, KRISTI NOEM, PAMELA BONDI, GARRETT RIPA, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, and DEPARTMENT OF HOMELAND SECURITY,

    Respondents.
_____/

# ORDER

Petitioner, Jose Luis Landaverde Ardon, is a citizen of El Salvador who "entered the United States without inspection" in 2013. (Dkt. 12 at 1; *see* Dkt. 1 ¶ 3; Dkt. 2 at 4; Dkt. 12-1 at 1–2.) On February 3, 2026, Petitioner was purportedly arrested for driving without a valid driver's license and booked into the county jail. (Dkt. 1 ¶¶ 26–27; Dkt 12 at 2.) Petitioner posted bond but was never released. (Dkt. 1 ¶ 26; Dkt. 12 at 2; *see* Dkt. 1-1.) Instead, Immigration and Customs Enforcement (ICE) officers allegedly arrested Petitioner pursuant to a Form I-200 warrant. (Dkt. 32 at 1 ("On February 5, 2026, Respondents issued, and read to [Petitioner], a [w]arrant of [a]rrest." (citing Dkt. 32-2)).) At the time, Respondents did not issue a notice requiring Petitioner to appear at any future deportation proceedings, which

would have informed him of the charges against him. (*Id.* ("On February 17, 2026, Respondents issued a [n]otice to [a]ppear." (citing Dkt. 32-1)).)

Following his arrest, Petitioner was taken to the local ICE office, where officials allegedly attempted to coerce him into self-deporting. (*See* Dkt. 1 at 5.) When Petitioner refused and reaffirmed his desire to go before an Immigration Judge, Respondents booked him into the Orange County Jail, without any pending charges or sentence to be served. (*See id.* ¶¶ 27–35.) Petitioner remained confined without the benefit of a notice to appear for nearly two weeks. (*See id.* ¶¶ 26, 34.)

Petitioner initiated this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. 1.) Petitioner maintained that 8 U.S.C. § 1226—not 8 U.S.C. § 1225—applied to his detention, but that Respondents had not complied with the statute's requirements, thereby violating his constitutional rights under the Fourth and Fifth Amendments. (*See* Dkt. 2 at 3–4; *see also* Dkt. 1 ¶¶ 6–8, 26–27, 41–48; Dkt. 17 at 3–7.) Respondents countered that 8 U.S.C. § 1225 applied and that, as a result, no warrant or notice to appear was needed. (*See* Dkts. 12, 29, 32.) Nonetheless, Respondents alternatively argued that should the court determine that section 1226 applied, the proper remedy was a bond hearing, not Petitioner's immediate release. (*See* Dkts. 12, 29, 32.)

"The Fifth Amendment, as well as the Fourteenth Amendment, protects every [noncitizen within the jurisdiction of the United States] from deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *see Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Whatever his status under the

immigration laws, [a noncitizen] is surely a 'person' in any ordinary sense of that term. [Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."); *Hincapie v. U.S. Att'y Gen*, 604 F. App'x 882, 884 (11th Cir. 2015) ("The Fifth Amendment right to due process applies to non[]citizens in removal proceedings." (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Rodriguez v. Quinones, Jr.*, No. 6:26-CV-187-PGB-DCI, 2026 WL 194218, at *2 (M.D. Fla. Jan. 26, 2026) ("Noncitizens present in the United States are entitled to due process under the Fifth Amendment[, . . . including] protection against deprivations of liberty, such as immigration detention, without due process of law." (quotation omitted)). Accordingly, "[l]imitations like the Due Process Clause . . . restrict the [g]overnment's power to detain noncitizens," and "[c]ourts must review immigration procedures and ensure that they comport with the Constitution." *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1334 (M.D. Ga. 2020) (citing *Demore v. Kim*, 538 U.S. 510 (2003)).

"The Immigration and Nationality Act (INA) establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("The INA establishes procedures for the [g]overnment to use when removing certain noncitizens from the United States and, in some cases, detaining them."); *see also Rojas v. U.S. Att'y Gen*, No. 22-13372, 2023 WL 7276652, at *1 (11th Cir. Nov. 3, 2023) ("Removal proceedings before an [i]mmigration [j]udge," as set

forth in the INA, "are the exclusive means of determining [a noncitizen's] removability"). The INA establishes two procedures for removing noncitizens from the country. *Urra Dorta v. Mordant*, No. 2:26-CV-217-SPC-DNF, 2026 WL 452407, at *1 (M.D. Fla. Feb. 18, 2026).

To begin, there are expedited removal proceedings, in which immigration officers may remove a noncitizen from the United States "without further hearing or review." 8 U.S.C. § 1225(b)(1). "Because expedited removal affords substantially fewer protections to the noncitizen's rights, the INA limits its applicability." *Urra Dorta*, 2026 WL 452407, at *1. Under the Act, a noncitizen may be subject to expedited removal if he (1) "is inadmissible because he . . . lacks a valid entry document," (2) "has not been physically present in the United States continuously for the [two]-year period immediately prior to the date of the determination of inadmissibility," and (3) "is among those whom the Secretary of Homeland Security has designated for expedited removal." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020). In this case, Respondents argue that Petitioner is properly detained under section 1225, but they make no cogent argument that Petitioner is subject to expedited removal. (*See* Dkts. 12, 29.) Petitioner was arrested while physically present in the United States, and he has purportedly lived in this country for more than ten years. (Dkt. 1 ¶¶ 3, 26; *see* Dkt. 12 at 1–2.) As a result, he is not eligible for expedited removal under section 1225.

That leaves the "ordinary course," in which the Department of Homeland Security (DHS) may initiate removal proceedings against a noncitizen who "is living

in the United States without authorization" under section 240 of the INA through a notice to appear. *Johnson*, 594 U.S. at 527 (citing 8 U.S.C. § 1229a); *see Arizona v. United States*, 567 U.S. 387, 407 (2012) ("When [a noncitizen] is suspected of being removable, a federal official issues an administrative document called a [n]otice to [a]ppear."). Indeed, federal regulations require that a noncitizen who is placed in section 240 removal proceedings receive written notice of the proceedings via a notice to appear. *See* 8 U.S.C. § 1229(a)(1) ("In removal proceedings under section [240], written notice (in this section referred to as a 'notice to appear') *shall* be given in person to the [noncitizen]." (emphasis added)); *Dragomirescu v. U.S. Att'y Gen.*, 44 F.4th 1351, 1354 (11th Cir. 2022) (observing that a notice to appear must be provided "in every removal case"). The notice acts as "a charging document" that "informs the [noncitizen] of the specific charges against him and outlines their legal and factual basis." *Dragomirescu*, 44 F.4th at 1354; *see Jimenez-Perez v. U.S. Att'y Gen*, 817 Fed. App'x 676, 680 (11th Cir. 2020) ("An immigration court is vested with jurisdiction to conduct removal proceedings upon the filing of a charging document. [A notice to appear] is a charging document." (citation omitted)).

"The INA further provides that DHS may arrest and detain" noncitizens who are placed in section 240 deportation proceedings "pending a decision on whether [they are] to be removed from the United States." *Johnson*, 594 U.S. at 527 (citing 8 U.S.C. § 1226); *see Arizona*, 567 U.S. at 407 ("The federal statutory structure instructs when it is appropriate to arrest [a noncitizen] during the removal process."). According to federal regulations, DHS may issue a warrant for the noncitizen's arrest

"[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, . . . under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 1236.1; *see* 8 U.S.C. § 1226 ("On a warrant issued by the [a]ttorney [g]eneral, [a noncitizen] may be arrested and detained *pending a decision on whether the [noncitizen] is to be removed* from the United States." (emphasis added)). Pursuant to the applicable statute, regulation, and caselaw, the arrest warrant must be issued at the time the notice to appear is issued or at any time thereafter. Thus, the arrest warrant cannot precede the notice to appear.

Respondents concede that they issued the warrant and arrested Petitioner nearly two weeks before they issued Petitioner's notice to appear. (*See* Dkt. 32 at 1; Dkt. 32-1 (Petitioner's notice to appear was served on February 17, 2026); Dkt. 32-2 (Petitioner's warrant for arrest was issued on February 5, 2026).) Because Respondents arrested Petitioner nearly two weeks before issuing his notice to appear, they lacked statutory authority to arrest Petitioner, as removal proceedings were not pending against him at that time. *See* 8 U.S.C. § 1226; 8 C.F.R. § 1236.1; *see also Arango v. Genalo*, No. 25-CV-6720 (RER), 2025 WL 3637500, at *2 (E.D.N.Y. Dec. 16, 2025) (determining that the petitioner's due process rights were violated because she "was not served with a [notice to appear until] after her arrest," in contravention of section 1236.1); *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (concluding that the government lacked authority to arrest a noncitizen pending a decision on whether he was to be removed from the country because the warrant issued three days before the notice to appear); *Castanon Nava v. Dep't of*

*Homeland Sec.*, 806 F. Supp. 3d 823, 853–54 (N.D. Ill. 2025) (holding that the government "lacked statutory and regulatory authority to . . . issu[e] I-200 warrants," to noncitizens "without the concurrent or prior issuance of an [notice to appear]," thus rendering the class members' I-200 warrants invalid).

Accordingly, the Petition for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED**. Respondents are **DIRECTED** to immediately release Petitioner. The Clerk is directed to close this case and terminate any pending motions as moot.

**ORDERED** in Orlando, Florida, on February 26, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party